UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

JAMES LANGFORD,

               Plaintiff,

v.

CARRIE KIENITZ et al.,

               Defendants.

_____/

Case No. 2:22-cv-152

Honorable Jane M. Beckering

## OPINION

      This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 4.) The Court previously stayed proceedings in this case and referred it to the Prisoner Civil Rights Litigation Early Mediation Program. (ECF No. 7.) On July 7, 2023, the Court received notification that the case did not settle. (ECF No. 11.)

      Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss the following claims for failure to state a claim: (1) Plaintiff's official capacity claims; (2) Plaintiff's individual capacity claims for declaratory and injunctive

relief; (3) Plaintiff's First Amendment access to the courts claims; (4) Plaintiff's First Amendment claims alleging interference with incoming mail; and (5) Plaintiff's Sixth Amendment claims. Plaintiff's individual capacity Fourteenth Amendment due process claims for damages premised upon the lack of notice and opportunity to be heard with respect to the rejected mail remain in the case.

**Discussion**

## I.     Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. The events about which he complains, however, occurred at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. Plaintiff sues Facility Inspector Unknown Party #1, Prisoner Counselor Unknown Leffel, and Mailroom Workers Carrie Kienitz and Unknown Party #2. Plaintiff indicates that he is suing all Defendants in their official and individual capacities. (ECF No. 1, PageID.6–7.)

Plaintiff alleges that he retained attorney Kristina Dunne to represent him in collateral attacks of his criminal conviction, both for a motion for relief from judgment to be filed in state court and for a petition for leave to file a successive habeas petition to be filed in the United States Court of Appeals for the Sixth Circuit. (*Id.*, PageID.7.) On October 25, 2021, Ms. Dunne mailed Plaintiff his original discovery materials via 3-day priority mail. (*Id.*) The mail arrived at LMF on October 28, 2021. (*Id.*) Plaintiff, however, did not receive them. Instead, on October 29, 2021, Defendant Kienitz emailed Ms. Dunne to ask if she had sent Plaintiff legal mail "in a large white box via Priority Mail." (*Id.*) Plaintiff has attached copies of the emails between Defendant Kienitz and Ms. Dunne to his complaint. In response, Ms. Dunne stated that she had sent a large white priority mail envelope. (ECF No. 1-3, PageID.22.) Defendant Kienitz then replied, stating: "You

2

stated in the email an envelope, this is a large box. Sorry, I misspoke and said white box, it's a large cardboard box. Was the mail sent priority mail via a large brown cardboard box?" (*Id.*, PageID.21.) Ms. Dunne replied, "No." (*Id.*) Defendant Kienitz then emailed Ms. Dunne to ask her to review an attachment, which was a "copy of the top of the box." (*Id.*) Defendant Kienitz stated that if the box was not sent by Ms. Dunne, they needed "confirmation via email." (*Id.*) That email was sent on November 1, 2021. (*Id.*) Three days later, on November 4, 2021, Ms. Dunne responded, stating: "Good afternoon I'm very concerned about this legal [mail] now I'm gonna have to call the warden and it looks like it's been tampered with[.] I didn't have all my receipts with me when you called me before . . . but I now have everything together and it looks like something was tampered with." (*Id.*) Plaintiff contends that during this "period of communication, [he] was left completely in limbo." (ECF No. 1, PageID.8.) He was never notified that he had received mail. (*Id.*) Moreover, Plaintiff did not receive a Notice of Package/Mail Rejection, a misconduct report, or a Notice of Intent to Conduct an Administrative Hearing (NOI). (*Id.*)

During the week of October 29, 2021, Plaintiff called home and was told by a family member that Ms. Dunne had called Plaintiff's family, "wanting to know if Plaintiff had received the mail that she had sent to [him] at [LMF]." (*Id.*) Ms. Dunne told Plaintiff's family that "she was concerned about a package that the prison had contacted her about, and that Defendant Kienitz was alleging that the package contained drugs." (*Id.*)

Plaintiff contacted Ms. Dunne to tell her that he had not received the mail she sent. (*Id.*) Ms. Dunne "explained what the picture Defendant Kienitz had sent her actually depicted." (*Id.*) She also "checked the shipping numbers against the ones she had received at the post office and they matched." (*Id.*) Ms. Dunne told Plaintiff that "it looked like the package had been damaged, that the Postal Service had repacked it in a cardboard box[,] and marked it with a bar code and

number." (*Id.*) Ms. Dunne told Plaintiff that the "package depicted was the mail that she [had] sent" him. (*Id.*) Plaintiff and Ms. Dunne "realized that the mail that [Ms.] Dunne had sent was damaged in shipment and had been repackaged by the United States Postal Service." (*Id.*, PageID.8–9.) There was "a separate 'Packed By' sticker with a bar code on the cardboard box . . . to signify the obviously damaged original package." (*Id.*, PageID.9.) Plaintiff alleges this conversation with Ms. Dunne occurred on November 3, 2021, and that he still had not received a Notice of Package/Mail Rejection, a misconduct report, or a NOI. (*Id.*)

Plaintiff filed a grievance about the issue. (*Id.*) That same week, Plaintiff tested positive for COVID-19 and began to experience various symptoms, such as "severe fever, fatigue, pneumonia[,] and general brain fog." (*Id.*, PageID.10.) On November 8, 2021, Defendant Leffel came to Plaintiff's cell and told him that the mail in question had been opened and that Plaintiff would not be receiving it because it had tested positive for drugs. (*Id.*) Plaintiff asked why he had not received notice and requested a hearing. (*Id.*) Defendant Leffel told Plaintiff that there would not be a hearing, that the legal mail would be confiscated, and that if he continued to complain he would be sent to segregation. (*Id.*)

Plaintiff told Defendant Leffel that the "mail in question contained legal advice from his attorney and witness statements that showed someone else committed the crime that he was convicted of." (*Id.*) Defendant Leffel responded that she "had read the letter and some of the statements and understood what they were but reiterated to the Plaintiff that he was not going to receive any of these items." (*Id.*, PageID.10–11.) Plaintiff asked Defendant Leffel for proof of the drug test, and asked if he could pay for a laboratory analysis to dispute the assertion that the mail contained drugs. (*Id.*, PageID.11.) Defendant Leffel "became very argumentative and said that the

decision had been made, that there would be no hearing[,] and that the facility Inspector (Defendant Unknown Inspector) told her the materials were being confiscated." (*Id.*)

On November 8, 2021, Defendant Leffel wrote a response to Plaintiff's grievance, stating that Defendants Unknown Parties #1 and #2 had received the mail "but would not deliver it as it was not in the original envelope that Attorney Dunne had sent and it had tested positive for 'K2.'" (*Id.*) The grievance response did not "include any evidence or reference that a drug test had been conducted." (*Id.*) That same day, Plaintiff was transferred to the Duane Waters Medical Treatment Center in Jackson, Michigan, because his COVID-19 symptoms "had become so severe as to require hospitalization." (*Id.*) Plaintiff continued to receive regular mail but still received no notice about the rejection of the mail in question. (*Id.*)

Plaintiff contends that there is "mounting evidence that instant drug tests for identifying 'K2' do not work and the standard instant test commonly reacts with chemicals in the paper tested to create a false positive." (*Id.*) He argues that Defendants have admitted to receiving the mail in question, and that Defendant Kienitz's emails to Ms. Dunne are "de facto acknowledgment that the legal mail in question was from an attorney, contained legal materials, and that the Mailroom Staff was aware of these facts." (*Id.*, PageID.12.) Plaintiff states that the mail in question contained over 1,000 pages that he cannot reproduce, including witness statements, lab reports, police reports, and affidavits "from the discovery materials that were utilized in [his] month long trial." (*Id.*, PageID.12.) Plaintiff "has no ability to discern exactly which documents the legal mail contained, but knows that he is missing exculpatory witness statements that were included." (*Id.*)

Plaintiff states that he was forced to contact the Wayne County Circuit Court to seek an entire copy of the discovery materials used at trial, but was told that it would cost him $1.00 per page, for a total of over $10,000.00, to reproduce the file. (*Id.*) He also suggests that the

confiscation of the mail has led to a deterioration of the attorney-client relationship between him

and Ms. Dunne because Plaintiff is "very upset" that she has not done more to help protect his

rights. (*Id.*, PageID.12–13.) Plaintiff tried to retain other counsel, who wanted $75,000.00 as a

retainer. (*Id.*, PageID.13.) Plaintiff states that he has been unable to retain other counsel because

of these "excessive costs" and is now forced to represent himself for his collateral attack. (*Id.*)

Plaintiff avers that he is unable to perfect a motion for relief from judgment and a petition for leave

to file a successive habeas opinion because the confiscated mail contains original copies of witness

statements indicating that someone other than Plaintiff committed the crime of which he was

convicted. (*Id.*)

Based on the foregoing, Plaintiff asserts the following claims for relief: (1) a First

Amendment claim for interference with incoming legal mail; (2) a First Amendment claim for

interference with his right to access the courts; (3) a Sixth Amendment claim for interference with

his attorney-client relationship; and (4) a Fourteenth Amendment procedural due process claim

premised on the deprivation of the mail in question without notice and a hearing.[1] (*Id.*, PageID.13–

14.) Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive

damages. (*Id.*, PageID.14–15.)

## II.   Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant

fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*,

---

[1] Plaintiff also references violations of his Fifth Amendment due process rights. (ECF No. 1,
PageID.14.) The Fifth Amendment, however, applies only to claims against federal employees,
and Plaintiff sues employees of the MDOC. Plaintiff, therefore, cannot maintain Fifth Amendment
due process claims, and such claims will be dismissed. *See, e.g.*, *Scott v. Clay Cnty., Tenn.*, 205
F.3d 867, 873 n.8 (6th Cir. 2000) (noting that "[t]he Fourteenth Amendment's Due Process Clause
restricts the activities of the states and their instrumentalities; whereas the Fifth Amendment's Due
Process Clause circumscribes only the actions of the federal government").

550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Official Capacity Claims

Plaintiff indicates that he is suing Defendants in their official and personal capacities. (ECF No. 1, PageID.6–7.) Although an action against a defendant in his or her individual capacity intends to impose liability on the specified individual, an action against the same defendant in his or her official capacity intends to impose liability only on the entity that they represent. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity: in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Plaintiff seeks declaratory and injunctive relief, as well as damages. Official capacity defendants, however, are absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). The Court, therefore, will dismiss Plaintiff's damages claims against Defendants in their official capacities.

An official capacity action seeking injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). Importantly, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Here, Plaintiff is no longer confined at LMF, which is where he avers Defendants are employed and where the harm allegedly occurred.

The Sixth Circuit has held that transfer to another correctional facility moots a prisoner's claims for declaratory and injunctive relief. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Underlying this rule is the premise that such relief is appropriate only where a plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the *result* of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *id.*; *Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609, 614, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988); *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).

Plaintiff has been transferred to KCF and has not alleged facts that would show that he will be subjected to further future conduct by the individual Defendants. Therefore, Plaintiff does not

seek relief properly characterized as prospective. *See Ladd*, 971 F.3d at 581. Accordingly, the Court will dismiss Plaintiff's official capacity claims in their entirety.[2]

### B.      Individual Capacity Claims

#### 1.      First Amendment Claims

##### a.      Access to the Courts

Plaintiff suggests that Defendants violated his First Amendment right to access the courts by failing to deliver the mail in question to him. (ECF No. 1, PageID.14.)

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824–25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous

---

[2] To the extent Plaintiff seeks declaratory and injunctive relief against Defendants in their individual capacities, such claims will also be dismissed for the reasons set forth above.

legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (discussing that *Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

Plaintiff alleges that he retained Ms. Dunne to represent him in collateral proceedings; namely, to assist him in filing a motion for relief from judgment pursuant to Michigan Court Rule 6.500, as well as to petition the Sixth Circuit Court of Appeals for leave to file a second or successive habeas corpus petition pursuant to 28 U.S.C. § 2254. Plaintiff, therefore, has sufficiently alleged facts that the underlying causes of action at issue are the types of action for which there can be actual injury.

Plaintiff alleges that without the confiscated legal materials, he "cannot perfect the Motion for Relief from Judg[]ment or make a request to the 6th Circuit Court of Appeals to allow a [s]uccessive [h]abeas [p]etition." (ECF No. 1, PageID.13.) According to Plaintiff, he cannot do so because the confiscated materials included "original copies of witness statements that show someone other than the Plaintiff committed the crime that the Plaintiff is currently convicted of." (*Id.*)

Although Plaintiff alleges that his supporting documentation was seized, the complaint does not allege facts from which the Court could infer any harm to Plaintiff's purported collateral proceedings. Plaintiff himself acknowledges that he has not initiated such proceedings in state and federal court. While Plaintiff may not be able to file a 6.500 motion or a petition seeking leave to file a second or successive § 2254 petition with documents supporting his claims, he has not alleged, and the Court cannot discern, why he cannot file a 6.500 motion or a petition seeking leave to file a second or successive § 2254 petition setting forth his new claims for relief and explaining why he cannot submit supporting documentation. Plaintiff himself suggests that the mail in question included "a portion of the witness statements, lab reports, police reports[,] and affidavits from the discovery materials that were utilized in the Plaintiff's month long trial." (ECF No. 1, PageID.12.) Presumably, the majority of these materials would still be in the possession of the investigating agency. Plaintiff does not explain why he cannot request that the state or federal court permit him discovery, perhaps in the form of a subpoena, so the records at issue could be obtained.

The Sixth Circuit has noted that "[e]xamples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005) (citing *Jackson v.*

12

*Gill*, 92 F. App'x 171, 173 (6th Cir. 2004)). Here, Plaintiff's allegations of a lost remedy are based only on speculation that his contemplated 6.500 motion and petition for leave to file a second or successive § 2254 petition would be dismissed if he cannot submit documentation in support thereof. Plaintiff has failed to show any lost remedy and, therefore, has failed to state a claim for denial of access to the courts. Accordingly, the Court will dismiss his First Amendment access to the courts claims against Defendants.

**b.      Interference with Incoming Mail**

Plaintiff also contends that Defendants violated his First Amendment rights by not delivering his incoming mail to him and by opening his legal mail outside of his presence. (ECF No. 1, PageID.13.)

"A prisoner's right to receive mail is protected by the First Amendment." *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "Mail is one medium of free speech, and the right to send and receive mail exists under the First Amendment." *Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008) (citing *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 427 (1993)). A prisoner, however, retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections systems." *Martin v. Kelley,* 803 F.2d 236, 240 n.7 (6th Cir. 1986) (*quoting Pell*, 417 U.S. at 822); *see Turner v. Safley,* 482 U.S. 78 (1987).

Moreover, the Sixth Circuit has held that prison regulations governing "legal" mail are subject to a heightened standard than those governing general mail. *See Sallier v. Brooks*, 343 F.3d 868, 873– 74 (6th Cir. 2003) (finding that legal mail is entitled to a heightened level of protection to avoid impinging on a prisoner's legal rights, the attorney-client privilege, and the right to access the courts). The ability of a prisoner "to receive materials of a legal nature" implicates a fundamental right. *Kensu*, 87 F.3d at 174; *see Sallier*, 343 F.3d at 873–74. Courts have therefore

13

extended protections to prisoners' legal mail that do not exist for general mail. For example, although "prison officials may open prisoners' incoming mail pursuant to a uniform and evenly applied policy with an eye to maintaining prison security," *Lavado v. Keohane*, 992 F.2d 601, 607 (6th Cir. 1993), "the opening of 'legal mail' should generally be in the inmate's presence." *Kensu*, 87 F.3d at 174 (citing *Wolff v. McDonnell*, 418 U.S. 539, 576–77 (1974)).

"[W]hat constitutes 'legal mail' is a question of law." *Sallier*, 343 F.3d at 871. "Mail from an attorney . . . is legal mail as a matter of law." *ACLU Fund of Mich. v. Livingston Cnty.*, 796 F.3d 636, 643 (6th Cir. 2015) (citing *Sallier*, 343 F.3d at 877). This includes where the attorney does not have an established attorney-client relationship. *See id.*

As an initial matter, the Court questions whether the mail that was rejected qualifies as legal mail. Plaintiff asserts that the mail was sent to him by Ms. Dunne, an attorney who Plaintiff retained to represent him for post-conviction proceedings. Ms. Dunne, however, represented that she mailed a white Priority Mail envelope to Plaintiff. Defendants, however, received a large cardboard box with Ms. Dunne's return address. (ECF No. 1-3, PageID.21–22.) The box in question was not explicitly mailed by Ms. Dunne. Plaintiff alleges, however, that he and Ms. Dunne eventually determined that the envelope Ms. Dunne had sent was "damaged in shipment and had been repackaged by the United States Postal Service." (ECF No. 1, PageID.9.) Ms. Dunne "was able to confirm the tracking numbers were the same as the ones that she had retained upon mailing the materials." (*Id.*) Given these allegations, the Court presumes, for the purposes of screening, that the mail in question constitutes legal mail despite the repackaging done by the postal service.

The Sixth Circuit has held that "'blatant disregard' for mail handling regulations concerning legal mail violates constitutional protections," *Merriweather v. Zamora*, 569 F.3d 307,

14

317 (6th Cir. 2009) (citing *Lavado*, 992 F.2d at 609), and that "[t]wo or three pieces of mail opened in an arbitrary or capricious way suffice to state a claim." *Id.* (citing *Sallier*, 343 F.3d at 879–80; *Lavado*, 992 F.2d at 609). However, "isolated instances of interference with prisoners' mail" may not rise to the level of a constitutional violation under the First Amendment. *See Johnson v. Wilkinson*, No. 98-3866, 2000 WL 1175519 (6th Cir. Aug. 11, 2000) ("This random and isolated interference with Johnson's mail did not violate his constitutional rights." (citation omitted)); *see also Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997) (holding that an "isolated incident, without any evidence of improper motive or resulting interference with [the inmate's] right to counsel or to access to the courts, does not give rise to a constitutional violation" (citations omitted)); *Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003) (stating that "Okoro was only able to provide one specific incident where he allegedly did not receive the full contents of a letter from his wife," and concluding that "[s]uch a random and isolated incident is insufficient to establish a constitutional violation" (citation omitted)); *cf. Colvin v. Caruso*, 605 F.3d 282, 293 (6th Cir. 2010) (citing *Johnson* for the holding that "isolated interference" with prisoners' rights may not rise to the level of a First Amendment violation).

Here, Plaintiff alleges that on one occasion, his legal mail was opened outside of his presence and rejected because it allegedly tested positive for K2 and was labeled as contraband. The Court recognizes that legal mail is entitled to additional protections and that it is possible that under some circumstances, even one instance of improperly processing legal mail could violate an inmate's constitutional rights. However, the facts as alleged by Plaintiff are not such a circumstance. As discussed above, Plaintiff has not set forth a claim that the rejection of the mail in question violated his right to access the courts. Likewise, as discussed *infra*, Plaintiff has not alleged a Sixth Amendment violation to the right to counsel. While "[t]wo or three pieces of mail

15

opened in an arbitrary or capricious way suffice to state a claim," Plaintiff does not allege that his legal mail was opened outside of his presence on multiple occasions. *Merriweather*, 569 F.3d at 317 (citing *Lavado*, 992 F.2d at 609). The facts as alleged by Plaintiff do not suggest blatant disregard for mail handling by Defendants. *Cf. Anderson v. Andrews*, No. 2:09-cv-109, 2010 WL 3475030, at *8 (W.D. Mich. June 29, 2010) ("[T]he opening of one piece of properly marked legal mail outside the prisoner's presence is not enough to state a claim."), *report & recommendation adopted*, 2010 WL 3474988 (W.D. Mich. Sept. 2, 2010). Plaintiff's First Amendment claims premised upon inference with his incoming mail will, therefore, be dismissed.

### 2.   Sixth Amendment

Plaintiff suggests that Defendants violated his Sixth Amendment rights, particularly the attorney-client relationship protected therein, by failing to deliver the mail purportedly from Ms. Dunne and by reading said mail. (ECF No. 1, PageID.14.) The Sixth Amendment right to counsel, however, applies only to criminal prosecutions. *See Wolff*, 418 U.S. at 576–77 ("As to the Sixth Amendment, its reach is only to protect the attorney-client relations in the criminal setting . . . ."); *see also Stanley v. Vining*, 602 F.3d 767, 770 (6th Cir. 2010).

Plaintiff does not allege any facts that support the inference that the mail in question related to a pending criminal proceeding. Instead, Plaintiff explicitly alleges that he had retained Ms. Dunne to "represent him in a collateral attack on Plaintiff's criminal conviction (Motion for Relief from Judg[]ment and [p]etitioning the 6th Circuit Court of Appeals for leave to file a [s]uccessive [h]abeas [p]etition." (ECF No. 1, PageID.7.) The right to counsel protected by the Sixth Amendment, however, "extends to the first appeal of right, and no further." *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). Here, because Plaintiff indicates that he retained Ms. Dunne for purposes of a collateral attack on his convictions and sentences, he has failed to allege that Ms.

Dunne was acting within the scope of the Sixth Amendment guarantee when she purportedly sent the mail in question to him. Accordingly, Plaintiff's Sixth Amendment claims will be dismissed.

### 3.      Fourteenth Amendment Due Process Claims

Plaintiff contends that Defendants violated his Fourteenth Amendment due process rights by failing to notify him about the rejection of the mail in question and failing to provide him with a hearing to challenge the rejection. (ECF No. 1, PageID.14.)

The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

It is well established that Plaintiff has a liberty interest in receiving his mail. *See Stanley v. Vining*, 602 F.3d 767, 769 (6th Cir. 2010) (citing *Procunier v. Martinez*, 416 U.S. 396, 428 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989)). The Sixth Circuit has held that an incoming mail censorship regulation must provide "that notice of rejection be given to the inmate-recipient" and that the inmate-recipient be given the opportunity to challenge the rejection. *Martin v. Kelley*, 803 F.2d 236, 243–44 (6th Cir. 1986). The regulation "must also provide for an appeal of the rejection decision to an impartial third party." *Id.* at 244.

Throughout his complaint, Plaintiff alleges that he never received from any of the named Defendants a Notice of Package/Mail Rejection, a misconduct report, or an NOI with respect to the mail in question. (ECF No. 1, PageID.8–11.) While Defendant Leffel did verbally notify Plaintiff on November 8, 2021 that he would not be receiving the mail in question because it had tested positive for drugs, Plaintiff alleges further that he specifically asked Defendant Leffel for

an administrative hearing so that he could challenge the rejection. (*Id.*, PageID.10.) Defendant Leffel, however, told Plaintiff that "there would be no hearing, that the mail was being confiscated[,] and that should Plaintiff complain any more that he would be going to [s]egregation." (*Id.*) Given these allegations, Plaintiff has set forth a plausible Fourteenth Amendment procedural due process claim against Defendants, premised upon Plaintiff's assertion that he did not receive the process to which he was due with respect to the rejected mail. Thus, Plaintiff's Fourteenth Amendment procedural due process claims may not be dismissed on preliminary review.[3]

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the following claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c): (1) Plaintiff's official capacity claims; (2) Plaintiff's individual capacity claims for declaratory and injunctive relief; (3) Plaintiff's First Amendment access to the courts claims; (4) Plaintiff's First Amendment claims alleging interference with incoming mail; and (5) Plaintiff's Sixth Amendment claims. Plaintiff's individual capacity Fourteenth Amendment

---

[3] To the extent that Plaintiff alleges that Defendants violated the MDOC's policy itself, Plaintiff fails to allege a constitutional claim. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994); *see also Laney v. Farley*, 501 F.3d 577, 580–81 & n.2 (6th Cir. 2007). Additionally, courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164; *Smith v. Freland*, 954 F.2d 343, 347–48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992).

due process claims for damages premised upon the lack of notice and opportunity to be heard with respect to the rejected mail remain in the case.

An order consistent with this opinion will be entered.


Dated:   August 1, 2023                        /s/ Jane M. Beckering
                                               Jane M. Beckering
                                               United States District Judge