UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAMES LANGFORD, #351520,

        Plaintiff,

v.

CARRIE KIENITZ, et al.,

        Defendants.
_____/

Case No. 2:22-cv-152

Hon. Jane M. Beckering
U.S. District Judge

# REPORT AND RECOMMENDATION

## I. Introduction

This Report and Recommendation (R. & R.) addresses the motion for summary judgment filed by Defendants Kienitz and Cromell (née Leffel) based on Plaintiff's failure to exhaust his administrative remedies. (ECF No. 19.)

Plaintiff — state prisoner James Langford — filed suit pursuant to 42 U.S.C. § 1983 on July 25, 2022. Langford proceeds *in forma pauperis*. (ECF No. 4.) In his verified complaint, Langford asserted that while he was incarcerated at the Alger Correctional Facility (LMF) in Munising, Michigan, LMF employees[1] violated his constitutional rights by interfering with his receipt of legal mail. (ECF No. 1, PageID.13-14.) More specifically, Langford alleged that on October 25, 2021, his

---

[1] Langford named as Defendants: (1) mailroom staff member Carrie Kienitz, (2) Prison Counselor (PC) Unknown Leffel, (3) an unknown inspector (Unknown Party #1), and (4) an unknown mailroom worker (Unknown Party #2). (ECF No. 1, PageID.6-7.)

attorney mailed him legal materials totaling more than 1,000 pages. (*Id.*, PageID.7, 12.) Defendants allegedly confiscated and opened the materials and tested them for drugs without issuing Langford any notice or conducting any kind of hearing. (*Id.*, PageID.8-10.) Defendants then informed Langford that he would not be receiving the materials because they had tested positive for synthetic drugs. (*Id.*, PageID.10.) Langford alleged that Defendants' actions violated his First, Fifth, Sixth, and Fourteenth Amendment rights. (*Id.*, PageID.13-14.)

At this stage of the case, only one set of claims remain: Langford's "individual capacity Fourteenth Amendment due process claims for damages premised upon the lack of notice and opportunity to be heard with respect to the rejected mail." (ECF No. 12, PageID.90.) Defendants Kienitz and Cromell now move for summary judgment on these claims, asserting that Langford did not properly exhaust his administrative remedies prior to filing suit. (ECF No. 19.) More specifically, Defendants Kienitz and Cromell argue that at Step I, the relevant grievance did not assert due process violations against them related to Langford's legal mail. (ECF No. 20, PageID.112.) In response, Langford contends that he asserted due process violations related to his legal mail at all three steps of the grievance process. (ECF No. 21, PageID.135-136.)

The undersigned respectfully recommends that the Court grant in part and deny in part Defendants' motion for summary judgment. (ECF No. 19.) Langford's grievance records establish that the relevant grievance complained of due process violations related to Langford's legal mail at all three steps of the Michigan

Department of Corrections (MDOC) grievance process. That grievance was considered and denied on its merits at Steps I and III of the grievance process. However, the Step I grievance pertained to LMF mailroom staff; it is undisputed that Defendant Kienitz worked in the mailroom, but Defendant Cromell was a prison counselor. Accordingly, it is the undersigned's opinion that Defendants have met their burden of establishing that there are no genuine issues of material fact and that Langford failed to exhaust his claim with respect to Defendant Cromell. But they have not met their burden with respect to Defendant Kienitz.

The undersigned additionally recommends that the Court dismiss Langford's claims against Unknown Party #1 and Unknown Party #2 without prejudice based on Langford's failure to timely effectuate service.

## II.  Factual Allegations

As set forth in this Court's August 1, 2023, screening opinion, Langford's verified complaint contained the following factual allegations.

> Plaintiff alleges that he retained attorney Kristina Dunne to represent him in collateral attacks of his criminal conviction, both for a motion for relief from judgment to be filed in state court and for a petition for leave to file a successive habeas petition to be filed in the United States Court of Appeals for the Sixth Circuit. (*Id.*, PageID.7.) On October 25, 2021, Ms. Dunne mailed Plaintiff his original discovery materials via 3-day priority mail. (*Id.*) The mail arrived at LMF on October 28, 2021. (*Id.*) Plaintiff, however, did not receive them. Instead, on October 29, 2021, Defendant Kienitz emailed Ms. Dunne to ask if she had sent Plaintiff legal mail "in a large white box via Priority Mail." (*Id.*) Plaintiff has attached copies of the emails between Defendant Kienitz and Ms. Dunne to his complaint. In response, Ms. Dunne stated that she had sent a large white priority mail envelope. (ECF No. 1-3, PageID.22.) Defendant Kienitz then replied, stating: "You stated in the email an envelope, this is a large box. Sorry, I misspoke and said white box, it's a large cardboard box. Was the mail sent priority mail via a large brown

3

cardboard box?" (*Id.*, PageID.21.)  Ms. Dunne replied, "No." (*Id.*) Defendant Kienitz then emailed Ms. Dunne to ask her to review an attachment, which was a "copy of the top of the box." (*Id.*) Defendant Kienitz stated that if the box was not sent by Ms. Dunne, they needed "confirmation via email." (*Id.*)  That email was sent on November 1, 2021. (*Id.*)  Three days later, on November 4, 2021, Ms. Dunne responded, stating: "Good afternoon I'm very concerned about this legal [mail] now I'm gonna have to call the warden and it looks like it's been tampered with[.] I didn't have all my receipts with me when you called me before . . . but I now have everything together and it looks like something was tampered with." (*Id.*)  Plaintiff contends that during this "period of communication, [he] was left completely in limbo." (ECF No. 1, PageID.8.)  He was never notified that he had received mail. (*Id.*) Moreover, Plaintiff did not receive a Notice of Package/Mail Rejection, a misconduct report, or a Notice of Intent to Conduct an Administrative Hearing (NOI). (*Id.*)

During the week of October 29, 2021, Plaintiff called home and was told by a family member that Ms. Dunne had called Plaintiff's family, "wanting to know if Plaintiff had received the mail that she had sent to [him] at [LMF]." (*Id.*)  Ms. Dunne told Plaintiff's family that "she was concerned about a package that the prison had contacted her about, and that Defendant Kienitz was alleging that the package contained drugs." (*Id.*)

Plaintiff contacted Ms. Dunne to tell her that he had not received the mail she sent. (*Id.*)  Ms. Dunne "explained what the picture Defendant Kienitz had sent her actually depicted." (*Id.*)  She also "checked the shipping numbers against the ones she had received at the post office and they matched." (*Id.*)  Ms. Dunne told Plaintiff that "it looked like the package had been damaged, that the Postal Service had repacked it in a cardboard box[,] and marked it with a bar code and number." (*Id.*) Ms. Dunne told Plaintiff that the "package depicted was the mail that she [had] sent" him. (*Id.*)  Plaintiff and Ms. Dunne "realized that the mail that [Ms.] Dunne had sent was damaged in shipment and had been repackaged by the United States Postal Service." (*Id.*, PageID.8–9.) There was "a separate 'Packed By' sticker with a bar code on the cardboard box . . . to signify the obviously damaged original package." (*Id.*, PageID.9.)  Plaintiff alleges this conversation with Ms. Dunne occurred on November 3, 2021, and that he still had not received a Notice of Package/Mail Rejection, a misconduct report, or a NOI. (*Id.*)

Plaintiff filed a grievance about the issue. (*Id.*)  That same week, Plaintiff tested positive for COVID-19 and began to experience various

4

symptoms, such as "severe fever, fatigue, pneumonia[,] and general brain fog." (*Id.*, PageID.10.) On November 8, 2021, Defendant Leffel came to Plaintiff's cell and told him that the mail in question had been opened and that Plaintiff would not be receiving it because it had tested positive for drugs. (*Id.*) Plaintiff asked why he had not received notice and requested a hearing. (*Id.*) Defendant Leffel told Plaintiff that there would not be a hearing, that the legal mail would be confiscated, and that if he continued to complain he would be sent to segregation. (*Id.*)

Plaintiff told Defendant Leffel that the "mail in question contained legal advice from his attorney and witness statements that showed someone else committed the crime that he was convicted of." (*Id.*) Defendant Leffel responded that she "had read the letter and some of the statements and understood what they were but reiterated to the Plaintiff that he was not going to receive any of these items." (*Id.*, PageID.10–11.) Plaintiff asked Defendant Leffel for proof of the drug test, and asked if he could pay for a laboratory analysis to dispute the assertion that the mail contained drugs. (*Id.*, PageID.11.) Defendant Leffel "became very argumentative and said that the decision had been made, that there would be no hearing[,] and that the facility Inspector (Defendant Unknown Inspector) told her the materials were being confiscated." (*Id.*)

On November 8, 2021, Defendant Leffel wrote a response to Plaintiff's grievance, stating that Defendants Unknown Parties #1 and #2 had received the mail "but would not deliver it as it was not in the original envelope that Attorney Dunne had sent and it had tested positive for 'K2.'" (*Id.*) The grievance response did not "include any evidence or reference that a drug test had been conducted." (*Id.*) That same day, Plaintiff was transferred to the Duane Waters Medical Treatment Center in Jackson, Michigan, because his COVID-19 symptoms "had become so severe as to require hospitalization." (*Id.*) Plaintiff continued to receive regular mail but still received no notice about the rejection of the mail in question. (*Id.*)

Plaintiff contends that there is "mounting evidence that instant drug tests for identifying 'K2' do not work and the standard instant test commonly reacts with chemicals in the paper tested to create a false positive." (*Id.*) He argues that Defendants have admitted to receiving the mail in question, and that Defendant Kienitz's emails to Ms. Dunne are "de facto acknowledgment that the legal mail in question was from an attorney, contained legal materials, and that the Mailroom Staff was aware of these facts." (*Id.*, PageID.12.) Plaintiff states that the mail in question contained over 1,000 pages that he cannot reproduce, including

witness statements, lab reports, police reports, and affidavits "from the discovery materials that were utilized in [his] month long trial." (*Id.*, PageID.12.) Plaintiff "has no ability to discern exactly which documents the legal mail contained, but knows that he is missing exculpatory witness statements that were included." (*Id.*)

Plaintiff states that he was forced to contact the Wayne County Circuit Court to seek an entire copy of the discovery materials used at trial, but was told that it would cost him $1.00 per page, for a total of over $10,000.00, to reproduce the file. (*Id.*) He also suggests that the confiscation of the mail has led to a deterioration of the attorney-client relationship between him and Ms. Dunne because Plaintiff is "very upset" that she has not done more to help protect his rights. (*Id.*, PageID.12–13.) Plaintiff tried to retain other counsel, who wanted $75,000.00 as a retainer. (*Id.*, PageID.13.) Plaintiff states that he has been unable to retain other counsel because of these "excessive costs" and is now forced to represent himself for his collateral attack. (*Id.*) Plaintiff avers that he is unable to perfect a motion for relief from judgment and a petition for leave to file a successive habeas opinion because the confiscated mail contains original copies of witness statements indicating that someone other than Plaintiff committed the crime of which he was convicted. (*Id.*)

(ECF No. 12, PageID.73-77.)

### III. Defendants Kienitz and Cromell

As set forth above, Defendants Kienitz and Cromell move for summary judgment based on Langford's failure to exhaust his administrative remedies. (ECF No. 19.)

#### a. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient

disagreement to require submission to a jury[2] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### b. Exhaustion

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that

---

[2] If defendants move for summary judgment on the basis of exhaustion under the PLRA, and the court determines that there is a genuine issue of material fact, the issue need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). Instead, the court may conduct a bench trial to resolve the issue. (*Id.*) In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Id.* at 677 (citing *Jones*, 549 U.S. at 218) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."); *Richards v. Perttu*, No. 2:20-CV-76, 2022 WL 842654, at *1 (W.D. Mich. Mar. 22, 2022) (affirming a magistrate judge's ruling that the preponderance of the evidence standard applies in a bench trial on exhaustion).

7

the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process

8

through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

MDOC Policy Directive 03.02.130 (effective March 18, 2019) sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to informally resolve a grievable issue within two business days of becoming aware of the issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If informal resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted informal resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated

Grievance Coordinator, who assigns it to a respondent. *Id.* at ¶ W. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ U, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ U, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

When the grievance procedures are not available because the issue presented is non-grievable, exhausting those procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays*

10

*v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well-known proverb states, they cannot have their cake and eat it too."). However, when other administrative remedies are available, the prisoner is required to exhaust those remedies prior to filing a federal lawsuit.

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

11

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[3]

### c. Analysis

Defendants argue that they are entitled to summary judgment based on Langford's failure to exhaust his administrative remedies because Langford did not raise due process violations against them in the relevant Step I grievance. (ECF No. 20, PageID.112.) Defendants concede that Langford raised due process violations in his Step II appeal to that grievance but argue that the MDOC never addressed the newly raised issue, so it was never exhausted. (*Id.*, PageID.113.)

The relevant Step I grievance is shown below.

---

[3] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

> **MICHIGAN DEPARTMENT OF CORRECTIONS**
> **PRISONER/PAROLEE GRIEVANCE FORM**
> 4835-4247 10/94
> CSJ-247A
>
> Date Received at Step I: 11/4/21   Grievance Identifier: LMF/21/11/1/1/5/15G
>
> Be brief and concise in describing your grievance issue. If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.
>
> | Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
> |---|---|---|---|---|---|
> | James Langford | 351520 | LMF | S-132-T | 10/29/21 | 11/3/21 |
>
> What attempt did you make to resolve this issue prior to writing this grievance? On what date? If none, explain why.
>
> My attorney Kristina Dunne contacted my family saying a woman in LMF's mailroom called her inquiring about legal mail she sent me. Her (my Attorney's) answer was "yes" She sent it.
>
> State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130.
>
> With in the last two weeks I have been expecting my discovery from my attorney. I have not received anything. Mail Room Staff is in violation of P.D. 05.03.118. Also attorney/client privilege has been violated by mailroom staff not opening my legal mail in my presence. I have not signed for any legal mail which should explain to mailroom staff that if My retained attorney told them she sent me my discovery, That has to be it. This could have been cleared up by simply comparing the priority mail receipt number that my attorney has and the number on the package. I can't duplicate that. Where is my legal mail? Alger mailroom staff is breaking state and federal laws without probable cause & without any regard for my due process protections. Mailroom Staff is also in violation of P.D. 04.07.112 section (M)(2). I need these items for litigation. I am being denied access to the Court, due to mailroom staff's illegal actions.
>
> *Grievant's Signature*
>
> RESPONSE (Grievant Interviewed?) ☒ Yes ☐ No  If No, give explanation. If resolved, explain resolution.
>
> All relevant parties in this grievance were interviewed. Prisoner Langford is grieving that he has not received his legal mail. After checking with Mailroom Staff and the Facility Inspector the legal mail in question was received in LMF mailroom in a cardboard box with a photocopy attached to the top. The mailroom contacted the Attorney and she confirmed she had sent mail but not in a box. The mail was then considered contraband at that time. The mail in question was tested and returned a positive result for K2. The mail has been secured in the MSP evidence locker for safe disposal. I found no violation of policy or procedure. Grievance denied at Step I.
>
> Respondent's Signature   11-8-21   Reviewer's Signature   11/10/21
> Respondent's Name (Print)  Working Title   J. Naeyaert   A/ADW
> Reviewer's Name (Print)  Working Title

(ECF No. 20-3, PageID.134.)

Clearly, Langford alleged that LMF mailroom staff were violating his due process rights by withholding his legal mail in October and November of 2021. While Langford did not specifically name the mailroom staff members involved, Defendant Cromell (then Leffel), acting as the Step I respondent, considered whether the actions

13

of "Mailroom Staff and the Facility Inspector" had violated policies or procedures related to Langford's legal mail. Defendant Cromell determined that the confiscation and testing of Langford's legal mail did not violate any policies or procedures.

In the undersigned's opinion, the relevant grievance was sufficient to place the MDOC on notice of Langford's due process claim against LMF mailroom staff. It is undisputed that Defendant Kienitz was an LMF mailroom staff member. As that grievance was pursued through all three steps of the grievance process and was denied on its merits at Steps I and III, it is the undersigned's opinion that Defendants have not satisfied their summary judgment burden with respect to Langford's due process claim against Defendant Kienitz.

However, it is also undisputed that Defendant Cromell was an LMF prison counselor; she was not a member of LMF mailroom staff. Langford's Step I grievance did not name or otherwise allege that Defendant Cromell engaged in any wrongdoing. And while Langford's Step III appeal did name Cromell (then Leffel) and allege that she was violating his constitutional rights, a plaintiff cannot exhaust a claim by asserting it for the first time in a Step II or Step III grievance appeal, unless the MDOC's appeal response indicates that it considered and addressed the new claim. *See Mays v. Skytta*, No. 2:19-CV-00217, 2021 WL 1536024, at *7 (W.D. Mich. Mar. 16, 2021), *R. & R. adopted*, No. 2:19-CV-217, 2021 WL 1534692 (W.D. Mich. Apr. 19, 2021). The response to Langford's Step III grievance appeal is shown below:

14

```
To Prisoner:           Langford                    #:  351520
Current Facility:      LMF
Grievance Identifier:  LMF-21-11-1115-15G
Step III Received:     12/15/2021
```

Your Step III appeal has been reviewed and considered by the Grievance Section of the Office of Legal Affairs in accordance with PD 03.02.130, "Prisoner/Parolee Grievances". Upon examination it has been determined that your issue was in fact considered, investigated, and a proper decision was rendered.

**THE STEP III APPEAL IS DENIED.**

THIS DECISION CANNOT BE APPEALED WITHIN THE DEPARTMENT.

(ECF No. 20-3, PageID.129.)

In the undersigned's opinion, nothing in the response to Langford's Step III grievance appeal indicates that the MDOC considered and addressed his new claims against Defendant Cromell. As such, it is the undersigned's opinion that Defendants have satisfied their summary judgment burden with respect to Defendant Cromell. There are no genuine issues of material fact, and Langford failed to exhaust his administrative remedies with respect to Defendant Cromell.

**IV.    Defendants Unknown Party # 1 and Unknown Party #2**

As a final matter, the undersigned addresses Langford's lack of service with respect to the unknown parties. Federal Rule of Civil Procedure 4(m) sets forth the deadline for service of process. It provides the following:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

Langford filed his complaint on July 25, 2022 — more than two years ago. (ECF No. 1.) Because this Court granted Langford leave to proceed *in forma pauperis*, this Court was obligated to issue Langford's summons to the U.S. Marshals for service "once reasonable steps [were] taken to identify for the court the defendants named in the complaint." *Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996); *see also* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process and perform all duties in such cases."). Indeed, the U.S. Marshals mailed a request for waiver of service to the identified defendants — Kienitz and Cromell — and those waivers were returned executed. (ECF Nos. 15, 16.) But because Langford never identified Unknown Party #1 or Unknown Party #2, the U.S. Marshals were unable to serve the defendants.

Ultimately, Langford was responsible for taking reasonable steps to identify the unknown parties. *See VanDiver v. Martin*, 304 F. Supp. 2d 934, 940 (E.D. Mich. 2004) ("[A] plaintiff may not remain silent and do nothing to effectuate service. At minimum, a plaintiff should request service upon the appropriate defendant and attempt to remedy any apparent service defects of which a plaintiff has knowledge." (quoting *Rochon v. Dawson*, 828 F.2d 1107, 1109 (5th Cir. 1987))). It does not appear that Langford has taken any such steps since filing his complaint. The undersigned therefore recommends that unless Langford can establish good cause for his failure to identify and therefore serve Unknown Party #1 and Unknown Party #2, the Court dismiss Langford's claims against the unknown parties in accordance with Rule 4(m).

In the undersigned's opinion, this R. & R. serves as sufficient notice that the Court may dismiss the claims absent a showing of good cause.

## V. Recommendation

The undersigned respectfully recommends that the Court grant in part and deny in part Defendants' motion for summary judgment. (ECF No. 19.) Langford's grievance records establish that the relevant grievance complained of due process violations related to Langford's legal mail at all three steps of the Michigan Department of Corrections (MDOC) grievance process. That grievance was considered and denied on its merits at Steps I and III of the grievance process. However, the Step I grievance pertained to LMF mailroom staff; it is undisputed that Defendant Kienitz worked in the mailroom, but Defendant Cromell was a prison counselor. Accordingly, it is the undersigned's opinion that Defendants have met their burden of establishing that there are no genuine issues of material fact and that Langford failed to exhaust his claim with respect to Defendant Cromell. But they have not met their burden with respect to Defendant Kienitz.

The undersigned additionally recommends that the Court dismiss Langford's claims against Unknown Party #1 and Unknown Party #2 without prejudice based on Langford's failure to timely effectuate service.

If the Court accepts this recommendation, Langford's due process claim against Defendant Kienitz will remain.

Dated:  February 2, 2024                                         /s/ *Maarten Vermaat*
                                                                 MAARTEN VERMAAT
                                                                 U. S. MAGISTRATE JUDGE

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).